## Case No. 15,569.

### UNITED STATES v. The LAUREL.

[Newb. 269.] [1]

District Court, D. Missouri. March, 1852.

SHIPPING—PUBLIC REGULATIONS—PENALTIES— LIEN.

1. By the second section of the act of congress approved July 7, 1838 [5 Stat. 304], entitled "An act to provide for the better security of the lives of passengers on board of vessels propelled in whole or in part by steam," no forfeiture of the boat is declared, and no express lien given on the boat for the penalty, in case of a violation.

2. The expression in the second section, "for which sum or sums the steamboat or vessel so engaged shall be liable," is simply used to give a remedy against the boat by libel, and was not intended to give a lien expressed or implied.

3. Where a steamboat violated the said second section, but subsequent to such violation, was seized and sold under the Missouri "boat and vessel act," by material men; held, that the United

[1] [Reported by John S. Newberry, Esq.]

States had no lien or claim, that could over-reach the claim of the material men, who had now acquired title to the vessel.

In admiralty.

The District Attorney, for the United States.

Thomas B. Hudson, for claimant.

WELLS, District Judge. This was a libel and seizure of a steamboat under the act of congress, approved 7th July, 1838, entitled "An act to provide for the better security of the lives of passengers on board of vessels propelled in whole or in part by steam." The particular violation of the act alleged in the libel was running the boat without a license under the second section, which is as follows: "Sec. 2. That it shall not be lawful for the owner, master or captain of any steamboat or vessel propelled in whole or in part by steam, to transport any goods, wares and merchandise or passengers, in or upon the bays, lakes, rivers or other navigable waters of the United States, from and after the first day of October, 1838, without having first obtained from the proper officer a license under the existing laws, and without having complied with the conditions imposed by this act; and for each and every violation of this section, the owner or owners of said vessel shall forfeit and pay to the United States the sum of $500, one-half for the use of the informer; and for which sum or sums the steamboat or vessel so engaged shall be liable, and may be seized and proceeded against summarily by way of libel in any district court of the United States having jurisdiction of the offence." The St. Louis Marine Railway and Dock Company intervened and filed a claim to the steamboat. The company had furnished materials for, and done work upon the boat, which, under the local law of Missouri, gave it a lien upon the boat. The statute of Missouri gave the lien, and directed the method of proceeding to enforce it. Under and in accordance with its provisions, the claim was filed in the court of common pleas for St. Louis county, and under process from that court the boat was seized by the sheriff before the libel was filed. Subsequently the boat was sold by virtue of the same proceeding, and the company became the purchaser. No exception was taken by the United States to the legality or regularity of these proceedings. No answer was filed or defence made by the owners of the boat, as those who owned the boat at the time she was run without the license. The boat had not been run since the claim of the company was filed in the court of common pleas, nor since the work was done and materials found.

It will be seen by reference to the section above quoted, that there is no forfeiture of the boat declared, nor is there any express lien given for the penalty. On the part of the United States it was insisted by the dis-trict attorney that the section expressly declared that the boat should be liable for the penalty, and he insisted further that this liability existed, no matter who might have been the owners at the time the penalty was incurred or to whom the boat might have been transferred afterward; that a lien acquired or sale made subsequent to the act done, although previous to the finding of the libel, could not prevent this proceeding for the penalty. The eleventh section of the act is as follows: "That the penalties imposed by this act may be sued for and recovered in the name of the United States in the district or circuit court of such district or circuit where the offence shall have been committed or forfeiture incurred, or in which the owner or master of such vessel may reside, one-half to the use of the informer, and the other to the use of the United States, or the said penalty may be prosecuted for by indictment in either of the said courts." Has the United States a lien upon the vessel for the penalty? The act gives no express lien. The acts of congress which give the United States a priority of payment in case of insolvency, or in the case of bankruptcy or death, where there is a general assignment of the property of the debtor, have nothing to do with this case. They give the United States a priority of payment out of the proceeds of the property, but give no lien or claim of any kind on the property itself. Nor do they avoid subsequent bona fide conveyances or liens. Act March 3, 1797, c. 20, § 5; [Brent v. Bank of Washington] 10 Pet. [35 U. S.] 596; [Beaston v. Farmers' Bank of Delaware] 12 Pet. [37 U. S.] 102; 1 Kent, Comm. 243–245. It will be seen by reference to section 2, above quoted, that the fine or penalty is against the owners and not against the boat: "The owner or owners shall forfeit and pay to the United States the sum of $500." It will also be seen by reference to that section and section 2, above quoted, that the United States have three methods of proceeding under the act for the enforcement of the penalty: by libel against the boat, and by suit and indictment against the owners. The expression in the second section, "for which sum or sums the steamboat or vessel so engaged shall be liable," is nothing but the phraseology used to give the remedy against the boat by libel, and was not intended to give any lien, either express or implied. "For which sum or sums the steamboat or vessel so engaged shall be liable, and may be seized and proceeded against summarily by way of libel, in any district court of the United States having jurisdiction of the offence." As the fine or penalty is against the owners and not against the boat, without such provision there could have been no proceeding by libel against the boat. The proceeding by libel was given, doubtless, because the owners might not be found or might reside in some other part of the Unit-

ed States, and therefore make a proceeding against them either impossible or very inconvenient and expensive, as witnesses would have to be taken into some other perhaps remote district. Nor would an informer be likely, for an offence committed in one district, to hunt up and prosecute the owner or owners in some other district, or in several districts. I know of no law, and none was cited, giving the United States a lien on any property for a fine or penalty. No case has been cited, and I know of none, wherein it has been held that the United States have such lien. If the case be likened to that of a foreign attachment, then the attachment first served holds the property, although the United States may be a party. In this case the property was first seized by the interveners. If it be likened to the case of an execution, the same principle prevails and governs. If it be like the case of several liens held by different persons, then in general, the oldest lien will have precedence. Here the claimant had a lien and the United States had no lien.

The case of a vessel declared by act of congress to be forfeited for certain violations of law—and there are many such—is somewhat analogous to the present case, but much stronger in favor of the United States; in the case at bar there is neither forfeiture nor lien  There is in the other case, not only a penalty, and the vessel declared liable, but the vessel is declared forfeited to the United States. The act of congress of December 31, 1792 [1 Stat. 287], declares that if a false oath be taken in order to procure the registry of a vessel, the vessel or its value shall be forfeited. The United States filed a libel and seized the Anthony Mangin, as forfeited under this act. After the offence was committed, but before the seizure by the United States, the vessel was sold to an innocent purchaser. The purchaser interfered. The district court of the United States for the district of Maryland held his claim good—and that the forfeiture did not overreach the subsequent alienation. U. S. v. The Anthony Mangin [Case No. 14,461]. In this decision the United States acquiesced. The owner, who took the false oath, became bankrupt, and the United States brought suit against his assignee for the price or value of the vessel, it having been sold as aforesaid. The supreme court of the United States decided against this claim, and held that the United States had no claim to the vessel before seizure. The case is very like this case. There the vessel, or its value, was declared forfeited. The United States might proceed against the vessel or against the owner for the value. In this case the United States might proceed against the vessel or might proceed against the owners by suit or indictment. The supreme court held that until the United States elected to proceed against the vessel, they had no claim to it; and consequently, if the vessel were sold before they so elected, the sale would be valid. U. S. v. Grundy, 3 Cranch [7 U. S.] 337. The effect of a forfeiture on the subsequent claims of material men having a lien, came before the supreme court for consideration in the case of The St. Jago de Cuba, 9 Wheat. [22 U. S.] 416, and that court expressly decided that such claims, when fair, were not overreached by a previous forfeiture, and that the same principle applied to the claims of seamen for wages, to claims for salvage, and generally to maritime contracts. The district court of the United States for Wisconsin, in the case of The Celestine [Case No. 2,541], held that the lien of material men was preferred to the claim of a bona fide purchaser without notice of the lien.

I think I might rest this case on the foregoing observations and authorities; but I will remark that if congress had intended the United States should have a lien on the vessel for the penalty, it would have been easy to say so. They have not so provided, either in this, or, I believe, in any other case. And the reasons must be obvious. Who would purchase a vessel, assist in running her, or repair or give her an outfit, if the United States could deprive them of their just claims, because of some violation of law of which they were wholly ignorant? Even if they knew of acts committed in violation of law, they could not know that the United States would ever proceed for the penalty. Or if the United States were disposed to proceed for the penalty, who could tell whether they would proceed against the vessel rather than against the owners? Such lien would not only be unjust but would be highly injurious to commerce and navigation. I think, therefore, that the United States have no lien or claim that can overreach the claim of these material men, who have now acquired title to the vessel. The claim of the St. Louis Marine Railway and Dock Company is sustained, the libel dismissed and the bond given by the claimants, canceled.